# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN BOWSER,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 2:16cv482 |
| | ) | **Electronic Filing** |
| **EMPYREAN SERVICES, LLC, GUIDANT GROUP, INC.,** and **DUKE ENERGY CORPORATION,** | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

I.  **INTRODUCTION**

Presently before the Court is the motion for conditional certification filed by John Bowser ("Plaintiff"), pursuant to § 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). (ECF No. 53). In the operative first amended complaint, Plaintiff asserts violations of the overtime provisions of the FLSA on behalf of himself, and all others similarly situated, against Empyrean Services, LLC ("Empyrean"), Guidant Group, Inc. ("Guidant"), and Duke Energy Corporation ("Duke) (*collectively*, "Defendants"). (Docket No. 33). This Court exercises subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. After careful consideration of the motion, the memoranda of the parties, and the record, the Court will GRANT Plaintiff's motion.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

In his first amended complaint, Plaintiff claims that Duke utilized the services of Guidant and Empyrean to provide it with a pool of contingent workers, paid on an hourly basis, who worked in excess of forty hours per week without any overtime compensation required under the FLSA. (ECF No. 33 ¶¶ 9, 12, 15, 20, 21, 23, 25, 26). Defendants are alleged to have jointly hired, fired, supervised, set pay rates, set schedules, and approved time worked by Plaintiff and the other contingent workers. (*Id.* ¶ 10). They also kept detailed records of the hours worked by each contingent worker. (*Id.* ¶ 18).

Guidant defines its relationship with Duke as that of a "managed services provider." (ECF No. 54-1 at 6). This relationship began in 2003. (ECF No. 54-1 at 7). Guidant's agreement with Duke is to provide laborers on an hourly basis. (ECF No. 54-1 at 36). As a function of their working arrangement, Duke provides Guidant with office space in Duke facilities in North Carolina and Ohio. (ECF No. 54-1 at 7). Guidant uses equipment provided by Duke at some of these facilities. (ECF No. 54-1 at 7).

For purposes of hiring contingent workers to perform various roles at Duke facilities, Guidant staff work with Duke's "hiring managers" to define the job duties and requirements for new hires. (ECF No. 54-1 at 9 – 10, 13). Guidant then liaises with various independent staffing agencies[1], and the staffing agencies provide candidates for openings. (ECF No. 54-1 at 11). Guidant characterizes its work with staffing agencies as a "collaborative effort." (ECF No. 54-1 at 19).

---

[1] Over 170, according to Defendants' records. (ECF No. 56-2).

Guidant does an initial screening of the candidates, then passes the information along to Duke's hiring managers to make a final determination. (ECF No. 54-1 at 11 – 12, 18). Once Duke approves of a particular candidate or candidates, Guidant sends out a "job order" to the relevant staffing agencies. (ECF No. 54-1 at 12). Guidant is then responsible for ensuring that the new contingent workers receive necessary training from Duke staff. (ECF No. 54-1 at 32, 39).

Workers must abide by Duke's policies, rules, and regulations. (ECF No. 54-1 at 45). Contingent workers use Duke's equipment, and wear Duke security badges. (ECF No. 54-1 at 46). Duke can require contingent workers to work overtime hours. (ECF No. 54-1 at 46 – 47). Guidant periodically follows up to check on Duke's level of satisfaction with the contingent workers. (ECF No. 54-1 at 23).

Guidant requires each staffing agency to enter a form agreement; the form agreements are generally the same for each agency, with the exception of mark-up rates which differ from agency to agency. (ECF No. 54-1 at 34). By the terms of these agreements, staffing agencies must comply with the FLSA, and Guidant randomly audits twenty percent of all new hires to check compliance. (ECF No. 54-1 at 40 – 41). The results of these audits are reported to Duke. (ECF No. 54-1 at 40 – 41, 47).

Staffing agencies are also obligated to ensure that all contingent workers are W-2 employees – not 1099 independent contractors. (ECF No. 54-1 at 42). Guidant expects that staffing agencies will pay contingent workers a salary. (ECF No. 54-1 at 52 – 53). However, it is left up to the staffing agencies to determine the terms of a chosen worker's employment. (ECF No. 54-1 at 13, 16). Guidant does not provide any instruction in this respect. (ECF No. 54-1 at 37). It does not check to make sure that contingent workers are guaranteed a set wage, even if

3

the workers do not work a full forty-hour week. (ECF No. 54-1 at 55). It is expected that the staffing agency will eat any shortfall that results from less than forty hours of work being billed. (ECF No. 54-1 at 69 – 71). Duke and Guidant do not consider the contingent workers to be their employees. (ECF No. 54-1 at 20, 42, 73).

Nonetheless, Duke or Guidant can have a contingent worker removed from Duke's facilities at any time. (ECF No. 54-1 at 24, 37 – 38). Duke provides the day-to-day supervision of a contingent worker, and can convert contingent workers into officially recognized Duke employees. (ECF No. 54-1 at 39). Staffing agencies cannot reassign a contingent worker to another company without Duke's prior consent. (ECF No. 54-1 at 38).

Guidant keeps a record of its contingent workers' time entries. (ECF No. 54-1 at 21 – 23). Each worker logs his or her hours on a timekeeping database maintained by Guidant; time is allocated according to "cost codes" associated with certain types of work performed for Duke. (ECF No. 54-1 at 24). Duke's management approves these entries for each contingent worker, and may reject entries or require edits to be made. (ECF No. 54-1 at 24 – 25). Once time entries are approved by Duke, an invoice is generated and payment is made to Guidant and the staffing agencies. (ECF No. 54-1 at 25). Staffing agencies are paid for each hour of time approved by Duke, and take a percentage off the top for service fees and expenses. (ECF No. 54-1 at 46, 62). The same rate is paid by Duke for all hours billed. (ECF No. 54-1 at 68).

If a contingent worker seeks a wage increase, the request is first made to his or her respective staffing agency, which passes the request on to Guidant. (ECF No. 54-1 at 27 – 28). If Guidant determines that such a request may be reasonable, it works with the staffing company on a proposal to present to Duke. (ECF No. 54-1 at 27 – 30). The decision to grant a request is within the sole discretion of Duke management. (ECF No. 54-1 at 30). Guidant, however, can

4

deny a request on its own accord. (ECF No. 54-1 at 30). Staffing agencies may also raise a contingent worker's wage by taking a lesser percentage of the invoiced cost of a worker's time.

Guidant has provided roughly 3,000 employees to Duke through the aforementioned process. (ECF No. 54-1 at 20). This includes Plaintiff, who worked at Duke facilities from August 2011, through October 2014. (ECF No. 54-2 at 1). He began with an hourly rate of $75.00, and ended at a rate of $76.50. (ECF No. 54-2 at 2). Plaintiff regularly worked overtime, but was compensated at the same flat rate. (ECF No. 54-2 at 2 – 3). Plaintiff was paid only for the hours he worked, and did not receive a guaranteed base salary if he did not work a full forty hours. (ECF No. 54-2 at 3). Many other contingent workers allegedly labored under the same conditions. (ECF No. 54-2 at 3).

On April 21, 2016, Plaintiff filed his initial complaint containing claims for FLSA violations. (ECF No. 1). The operative first amended complaint followed. (ECF No. 33). Having completed a preliminary period of discovery, the instant motion for conditional class certification was filed. (ECF No. 55). The matter is fully briefed and ripe for disposition.

### III.  STANDARD OF REVIEW

The FLSA was "designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)). In furtherance of this end, the FLSA allows an employee to assert a violation through a collective action by filing a complaint on "behalf of himself…and other employees similarly situated." *Id.* (citing 29 U.S.C. § 216(b)). However, similarly situated employees must opt-in for a collective action to proceed. *Halle v. West Penn Allegheny Health Sys., Inc.*, 842 F.3d 215,

224 (3d Cir. 2016). This requires the court to analyze whether a potential class of opt-in plaintiffs is sufficiently alike to be considered "similarly situated." *Id.*

Such a determination entails a two-step certification process. *Id.* The first step, known as "conditional certification," requires that a named plaintiff "make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)). Should this showing be made, a court-approved notice will be sent to proposed members of the collective action. *Id.*

The second step, referred to as "final certification," places upon the named plaintiff the burden of demonstrating that he or she is similarly situated to opt-in plaintiffs. *Id.* at 226 (citing *Zavala*, 691 F.3d at 537). "'Being similarly situated means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.'" *Id.* (quoting *Zavala*, 691 F.3d at 538). In making this determination, the court will look to a number of factors, specifically: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Andrako v. U.S. Steel Corp.*, 788 F.Supp.2d 372, 378 (W.D. Pa. 2011) (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)).

**IV.    DISCUSSION**

In their opposition to Plaintiff's motion, Defendants initially argue that a more exacting standard should be used than is typical for conditional certification – an intermediate standard. (ECF No. 56 at 10 – 13). This is because the Court ordered a preliminary period of discovery for

6

purposes of determining whether Plaintiff could assert facts sufficient to justify a grant of conditional certification. (*Id.*). The Court declines to adopt such an approach, here.

Defendants place particular reliance upon *Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017). In that case, the district court utilized a heightened "intermediate standard" which requires "'some factual showing that the similarly-situated requirement is satisfied,' 'as a result of the discovery as measured against the original allegations and defenses.'" *Id.* at *6 (quoting *Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 827 (N.D. Ohio 2011)). Thus, Defendants would have Plaintiff now attempt to make a "modest plus factual showing, not just a modest showing." *Id.* at *9.

In *Sloane*, however, the district court goes to great length to detail the significant discovery exchanged by the parties over a period of three years as a result of multiple related cases, and that a number of plaintiffs had – by that point – opted-in. The *Sloane* court described it as both "substantial" and "extensive," noting that "the more discovery you have received, the more searching a standard to which your motion to certify will be held." *Id.* *Sloane* is not so similar to the present case to warrant such a finding, here.[2]

District courts have generally found that a more heightened standard at the conditional certification stage is not appropriate when discovery has not been concluded, no plaintiffs have opted-in, and/or the case is not ready for trial. *See Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F.Supp.2d 493, 497 – 98 (D.N.J. 2000) (analysis was beyond first tier; 100 potential plaintiffs had opted-in and discovery was complete); *Given v. Love's Travel Stops & Country Stores, Inc.*, 2018 WL 925996, at * 1 n. 1 (M.D. Pa. Feb. 16, 2018) (that some discovery occurred prior to a

---

[2] The Court ordered only an "initial phase" of fact discovery. (ECF No. 45).

7

motion for conditional certification does not necessitate a more searching standard); *Manning v. Goldbelt Falcon, LLC*, 2010 WL 3906735, at *2 (D.N.J. Sept. 29, 2010) (some discovery was conducted and some plaintiffs had opted-in; however, a heightened standard of review was not appropriate because discovery was not complete and the case was not ready for trial); *Herring v. Hewitt Assocs. Inc.*, 2007 WL 2121693, at *4 (D.N.J. July 24, 2007) (although some discovery aimed at conditional class certification was conducted, the district court did not utilize a heightened standard; a more substantial factual determination is not appropriate before discovery is complete and the case is ready for trial). Accordingly, the Court will look only to whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015).

Defendants first attack Plaintiff's motion on the basis that he has not made a modest factual showing of a nexus between the manner in which his employers' policies affected him and the manner in which the policies affected others similarly situated. (ECF No. 56 at 13). Defendants look to the following factors for support: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." (*Id.*). Defendants' argument that the above factors have not been met is premature.

The above factors are part of the analysis during the final certification stage. *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011). "In the second stage of class certification, after putative class members have filed their consents to opt-in…and after the court is more fully informed through discovery," the burden of

8

demonstrating that potential class members are similarly situated "is significantly higher," and involves evaluation of the three factors above outlined. *Id. See also Moss*, 201 F.R.D. at 409 (three factors are applied in the "second or post discovery stage to determine whether opt-in plaintiffs are 'similarly situated'"); *Martin v. Citizens Fin. Grp., Inc.*, 2013 WL 1234081, at * 3 (E.D. Pa. Mar. 27, 2013) (list of factors relevant to question of being similarly situated is utilized at the second stage of the certification process); *Garcia v. Freedom Mortg. Corp.*, 2009 WL 3754070, at *3 n. 4 (D.N.J. Nov. 2, 2009) (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n. 17 (3d Cir. 2007)) (looking to the three factors to determine if putative class members are similarly situated only *after* discovery). Defendants are reminded that conditional certification is not true certification, but only the "exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536).

The Court may make this determination with minimal evidence, *Herring*, 2007 WL 2121693, at * 4, and this step's fairly lenient standard typically results in a grant of conditional certification. *Moss*, 201 F.R.D. at 409. (citing *Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995)). Unless patently obvious that a plaintiff "cannot prevail as a matter of law…or that the commonality of generally applicable employment and compensation policies *necessarily* pales in comparison to individualized determinations of liability," *Stallard v. Fifth Third Bank*, 2013 WL 12308493, at *2 (W.D. Pa. Dec. 12, 2013), the court should allow notice and a period of discovery to allow for development of a "much thicker record" by which to judge the propriety of a collective action vis-à-vis the similarity of a plaintiff to the proposed members of the collective action. *Zymczyk*, 656 F.3d at 193 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).

Plaintiff has alleged that Duke's contingent workers, hired via the process outlined by Guidant employee Michael S. Mulder in his deposition, are categorized as exempt – per Duke and Guidant's demands in form agreements with various staffing agencies. Yet, Duke pays for the services of the contingent workers on an hourly basis, at a predetermined rate, without adjustments for work in excess of forty hours per week. Guidant contends that it performs audits on twenty percent of new hires on behalf of Duke, but makes no other attempts to ensure FLSA compliance by the staffing agencies or to provide instruction. All contingent workers are subject to the same hiring and training process, the same requirement to work over forty hours per week when required by Duke, the same billing approval process, the same Duke policies, the same restrictions on their ability to work for another company without Duke's permission, and the same requirements for seeking changes in pay.

Defendants contend that Plaintiff was only Empyrean's employee, that Empyrean controlled his pay, that Empyrean provided only seven contingent workers to Duke, and that there was no centralized payroll system. (ECF No. 56 at 15 – 23). According to Defendants, there is nothing to suggest that other staffing agencies paid their employees similarly or that Defendants were joint employers. (*Id.*). A factual nexus cannot, therefore, exist and the proposed collective action is inappropriate. (*Id.*).

Based upon the Court's reading of the facts of record, Plaintiff has succeeded in demonstrating the existence of a factual nexus between the effect of Defendants' pay policies on him, and the similar effect these policies have on other contingent workers. It appears that the relationship between Duke, Guidant, and Empyrean is the same as it is between Duke, Guidant, and all other staffing agencies, with the exception of different mark-up rates. The agreements between these entities dictate how contingent workers are to be hired, trained, and compensated.

Even if the staffing agencies were not given explicit instruction on how to compensate contingent workers, it is abundantly clear that payment for a contingent worker was based solely on hours worked, without any FLSA mandated increase for overtime.

That potential opt-in plaintiffs held different jobs, in different departments, at different locations does not preclude conditional certification because all were subject to the same allegedly unlawful policy. *Beauchamp v. Penn Mutual Life Ins. Co.*, 2011 WL 3268161, at *5 (E.D. Pa. July 29, 2011) (citing *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001)). "Any dissimilarities in job functions which would exclude a class member will be reevaluated at stage two when discovery is complete." *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 509 (W.D. Pa. 2009). Whether individualized determinations will predominate and render this case unsuitable for a collective action is "'more appropriately reviewed during step two of the certification process.'" *Rocha v. Gateway Funding Diversified Mortgage Servs., L.P.*, 2016 WL 3077936, at *9 (E.D. Pa. June 1, 2016) (quoting *Burkhart-Deal v. Citifinancial, Inc.*, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010)). Even, "where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Manning*, 2010 WL 3906735, at *3.

Thus, the majority of Defendants' concerns are more appropriately raised at final certification, once discovery has been completed. Plaintiff has presented the required, modest factual showing of "an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil*, 2015 WL 7871360, at *3. The question of whether or

11

not plaintiff has stated a cause of action, or will prevail, is a merits-based argument that the Court will not entertain at the conditional certification stage. *Herring*, 2007 WL 2121693, at *8.

### V. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has presented evidence sufficient to establish the existence of a factual nexus and to warrant issuance of notice to putative opt-in plaintiffs. Accordingly, Plaintiff's motion for conditional class certification will be granted and a class will conditionally be certified. Appropriate orders will follow.

Date: March 30, 2018

<pre>
                                        s/David Stewart Cercone
                                        David Stewart Cercone
                                        Senior United States District Judge
</pre>